# UNITED STATES DISTRICT COURT

For the

### EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **Jeffrey Weinhaus,** an individual and incarcerated person in the possession of the State of Missouri at the Eastern Reception, Diagnostic and Correctional Center, ID# 1261778,<br><br>Plaintiff<br><br>vs.<br><br>**Anne L. Precythe,** in her representative capacity as Director Missouri Department of Corrections; **Troy Steele** in his representative capacity as Warden, of Eastern Reception Diagnostic and Correctional Center;  **Joshua David Hawley,** in his representative capacity as the Attorney General of the State of Missouri; **Steven M. Pelton**, in his representative capacity as Sheriff of Franklin County, MO.; **Colonel Sandra K. Karsten,** in her representative capacity as Commanding Officer of the Missouri Highway Patrol,<br><br>Defendants. | Case No.:_____<br><br>DECLARATORY ACTION TO VACATE CONVICTION BASED ON THE VIOLATION OF STATE AND FEDERAL CONSTITUTIONAL RIGHTS. UNDER 28 USC §2201<br><br>FEDERAL QUESTIONS PRESENTED.<br><br>BENCH TRIAL REQUESTED |

## NATURE OF THE ACTION

Plaintiff, Jeffrey Weinhaus, by his attorney Warren R. Markowitz, brings this declaratory action to vacate his conviction by jury verdict on October 10, 2013 in the Franklin County Court, Franklin County, Missouri. This action is based upon multiple violations of the Constitutions of the United States of America and the State of Missouri, and seeks an order directing the parties in

control of his person to vacate the judgment and conviction and to release him from custody..At present, Plaintiff is an incarcerated person, in the custody and control of the State of Missouri, residing in the Eastern Reception, Diagnostic and Correctional Center (ERDCC), and subject to the dictates of the Warden of the ERDCC, the Attorney General of the State of Missouri, and the various laws, rules, regulations and administrative directives applicable to him during his incarceration.

## JURISDICTION AND VENUE

This action is properly brought under 28 USC §2201, an action for Declaratory Relief..Jurisdiction is proper in this matter under 28 USC §1331, as the matters raised herein fall under the United States Constitution and through supplemental jurisdiction under 28 USC §1367 for those State Constitutional violations raised as part of this action.

Venue is proper under 28 USC §1391 as all matters directly and indirectly related to the claims presented by the Plaintiff took place within the State of Missouri, & within the District in which this court sits.

## HISTORY AND UNDERLYING FACTS

1. Jeffrey Weinhaus ('Weinhaus' or 'Plaintiff') is an individual, presently confined in the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri.

2. Plaintiff, prior to his conviction and incarceration in November 2013, was a freelance journalist and had been for more than ten (10) years.

3. Plaintiff published political and religious materials under the *nom de plume* "BulletinMan".

4. Plaintiff was a candidate in several local/county political races, and he actively participated in the political discourse within his community.

5. For more than a decade, plaintiff was a known quantity in political and social circles, particularly in the county and counties surrounding his home.. He distributed a regional bulletin that openly and critically discussed political matters, political races, and judicial elections, which included in this exercise of free speech, his opinions and evaluations of the participants of said races. His publications served as an advertising platform for local and regional businesses with similar political leanings and he believed his positions were gaining traction in the community.

6. Weinhaus asserts that his critical political positions, sometimes adverse to incumbents, are the cornerstones of the entire sequence of events that has placed him in the criminal justice system and that ultimately has brought him to this court.

7.  With the growth of the internet, plaintiff expanded his means of distribution by taking advantage of new journalistic opportunities by using online platforms such as YouTube.com

8. Plaintiff, in his capacity as a freelance journalist, published and distributed, in hard copy and through the internet, dozens if not hundreds of short videos and commentary pieces.

9. Plaintiff in his videos and in the exercise of his right of unfettered political speech spoke and opined about diverse matters including but not limited to religious rights, political rights, social and communal obligations and responsibilities as he saw them applied to

current political and social environments. He was very critical of the political use of the police and the judiciary as an instrument of social control. His exercise of his free speech rights clearly protected by the 1st Amendment and every applicable Supreme Court decision have many times, as in this case, conflicted with the local government and political positions.

10. On the 16th of August 2012, Plaintiff published a video on YouTube.com, titled "BulletinMan Broadcast 8-16-12 The Party's Over!" https://youtu.be/qHw0sDThkN8,

11. The video contained commentary opinion and political positions espoused by the plaintiff and was the predicate cause under which the present chain of events is based. Beginning with Weinhaus' initial contact with the Missouri Highway Patrol ("MHP") at his home, the use of fraudulent affidavits to get a search warrant of his home and the illegal search of his home, which in turn led to the ruse that drew him to the meeting at the gas station with the same MHP officers, that resulted in his unprovoked shooting by the same MHP officers, culminating in an unjustified term of incarceration of more than thirty years.


**INITIAL CONTACT WITH MHP OFFICERS**

12. On or about the 22nd of August 2012, Weinhaus was subjected to an unannounced visit at his home by two (2) MHP Officers, Sgt. Folsom and Corporal Mertens.

13. The officers stated that they were acting under orders from their superiors who were tasked by a sitting judge who took personal affront of the statements made by Weinhaus with investigating Weinhaus, to determine Weinhaus' intentions stemming from the video of August 16th.

14. The officers appeared at the door of the Weinhaus home without prior notice or a search warrant and requested Weinhaus' cooperation to discuss the video of August 16th 2012. Weinhaus agreed to the surprise interview without condition..

15. Weinhaus refused to see the officers in his home or permit them to enter and had them conduct the interview in the driveway some 25-30' from the front door.

16. Weinhaus, spoke candidly with both officers who told him that certain persons were offended by the subject matter of the video and felt threatened by it.

17. Weinhaus openly discussed the video, his political and social positions, his intentions and political results he hoped for surrounding the video and its contents.

18. The MHP officers asked Weinhaus if he would voluntarily surrender his computers and the peripheral equipment in order that they be inspected and evaluated by the police.. Weinhaus refused the request as unwarranted and unreasonable.

19. Both officers during their court testimony clearly stated that they concluded that Weinhaus did not pose a threat to others, or any unspecified elected official..The nature and tone of the interaction and cooperation of Weinhaus is documented in the deposition testimony taken before trial of both officers, and supports the conclusions that Weinhaus was stressing political points, not advertising or inciting political violence.

20. Immediately after the driveway interview and after Weinhaus had refused to voluntarily surrender his computers and peripherals,,,,Sgt. Folsom announced that he smelled marijuana emanating from Weinhaus' home and requested permission to enter to search the premises. Permission was denied.

21. After refusing the police permission to enter and search his home which Weinhaus still believed was about his computers, he was informed that a search warrant was being applied for to investigate the alleged smell. Weinhaus was denied re-entry to his home, was handcuffed and physically restrained.

22. Weinhaus was detained & effectively arrested for four hours while one of the officers shopped for a judge willing to execute a search warrant based on an alleged smell some 30 feet distant from the house.

23. The location of $1/10^{th}$ of one ounce of marijuana in a remote location inside the house constituted a baseless, fraudulent and fabricated claim by the police to procure and execute a search warrant that permitted the seizure of the Weinhaus computers upon a patently ridiculous and impossible claim of the smell of marijuana.

24. A significant part of Plaintiff's claim hereunder was the inadequacy of defense counsel illustrated by the simple premise that had counsel bothered to secure expert testimony on the issue of whether or not a tiny bagged amount of marijuana could be detected at a distance of 30' from the Weinhaus home plus an additional 20' from the front door to the location where the marijuana was found, would have shown that even a trained drug dog could not have detected 1/10th of an ounce at the incontroverted distance Sgt. Folsom was from the house and the illegal seizure of drug evidence (1.5 morphine pills) would have been suppressed and more fully highlight the unconscionable shooting of Weinhaus sometime later.

**ILLEGAL SEARCH**

25. The testimony of the officers of the MHP, clearly stated that they were unable to contact

the Franklin County Sheriff and therefore he or his representative did not participate in

the service and execution of the warrant, in direct violation of the requirements in

Missouri Revised Statute, section 43.200, subsection 3, which clearly and unquestionably

states the following:

> The members of the highway patrol may request that the prosecuting or circuit attorney apply for, and members of the highway patrol may serve, search warrants anywhere within the state of Missouri, ***provided the sheriff of the county in which the warrant is to be served, or his designee, shall be notified upon application by the applicant of the search warrant*** except for offenses pertaining to driving while intoxicated. ***The sheriff or his or her designee shall participate in serving the search warrant*** except for offenses pertaining to driving while intoxicated and the investigation of motor vehicle traffic accidents. Any designee of the sheriff shall be a deputy sheriff or other person certified as a peace officer under chapter 590. The sheriff shall always have a designee available. (***Emphasis Added***)

Significantly, trial counsel never raised the above procedural issue to make any attempt to

quash  the search warrant and to suppress the fruits of the search.

26. The marijuana, which was the basis for the alleged smell and ruse to enter the home

under a search warrant, was found downstairs, in the basement, "….just outside of the

door of the command center [basement office] on a bag up on top of a high shelf...

[they]found a bag containing marijuana" as stated by the officers during trial.

27. The search resulted in the officers confiscating approx 1/10 oz of marijuana, 1.5 pills of

prescription morphine and the personal computers (a total of three (3)) and ancillary

electronic devices, effectively removing Weinhaus' 'printing press' putting him out of

business and silencing his political and social voice.

28. In addition the Officers located and identified a 9mm pistol in a flap holster (according to their own statements) in the night stand in what was determined to be the master bedroom.

29. Significantly the officers did not collect or seize the pistol or otherwise remove it from the Weinhaus home, even with the allegations that unidentified persons that had instructed them to conduct the interview as to his intentions had feared for their safety.

30. The Officers, took the computers and video equipment, the modern printing press, that had no possible relevance or connection to Plaintiff's drug possession, and in fact was the true object and goal of the illegal search warrant; an attempt to stifle Plaintiff's protected political speech.

31. Weinhaus was released from his illegal detention outside his home, after several hours and after the search was concluded; at which time he was permitted to reenter his home.

32. The executed search warrant and seizure of Plaintiff's computers and video equipment silenced Weinhaus, denying him his 1st Amendment Rights and associated rights under the Missouri State Constitution, the ability to produce his newsletter/bulletin, publish his on-line videos and accomplished the intent to silence Weinhaus.

33.  Weinhaus made several attempts to contact the MHP and retrieve his personal computers, video equipment and such, including a pro se filing of a Writ of Replevin.

34. Weinhaus' attempts to retrieve his property in this manner failed without excuse or explanation.

## FURTHER CONTACT WITH OFFICERS

35. On September 11th 2012,Weinhaus received a phone call from Sgt. Folsom of the Missouri Highway Patrol (MHP) telling him that the MHP was prepared to return the computers and other electronics to him.

36. This was a ruse to gain access to Weinhaus alone and on open ground.

37. Normal and generally accepted police procedure for the return of personal property would be to have the owner appear at the property clerk/police station, sign a receipt and accept delivery. Defense trial counsel never explored the reason behind the abnormal procedure advanced by the MHP Officers, as Weinhaus could have been arrested without incident had 'normal' procedure been adhered to.

38. Weinhaus would have voluntarily appeared at the Police Station/Property Clerk had he been asked.

39.  Weinhaus agreed to the meeting, selected by the officers to be at a local gas station, a short distance from his home for the assumed property delivery.

40. Weinhaus was concerned about the blatantly bizarre procedures to return his property and wanted others to witness the property delivery He was unsuccessful in locating anyone to attend the meeting with him.

41.  Instead, Weinhaus met the officers alone, with his wife listening to and recording the audio of the events of the meeting on her cell phone.

42. In another example of the inept and ineffective assistance of Counsel, Defense Counsel never introduced or question Weinhaus' wife as a witness for any other purpose but

character, neglecting the events of the day and her witnessing the events unfold via telephone.

43. Weinhaus was made a gift of a video recording watch, by his wife, some time before the events discussed herein and was wearing said watch on his left wrist, during the entire chain of events before and after the shooting of Weinhaus by the Officers.

44. Weinhaus is a right handed person.

45. Weinhaus had no knowledge of or an indication that the purpose of the meeting with the officers was a ruse to arrest him. This police intention could have easily been accomplished by asking him to the police station to reclaim his property. Defense Counsel again failed to explore the reason behind the ruse.

46. Based on the contents of the August 16th video, the Officers stated during trial that failure to arrest Weinhaus would have resulted in attaching a GPS device to his vehicles and placing him under surveillance until Constitution Day, September 17th, had passed. The significance of September 17 was referred to by Weinhaus in the August 16th video as the date demanding that the "corrupt judiciary and politicians" should leave the courthouse, with nothing that constituted a direct or implied physical threat.

47. Weinhaus not being a disqualified person under Missouri or Federal Law and in compliance with the open carry provisions of Missouri was wearing the 9mm pistol earlier identified and located at his home by the same officers.

48.  Weinhaus was carrying the pistol in a flap retention style holster, on his left side, forward of his hip, as he was driving his vehicle and he was unable to buckle his seat belt while wearing it on his right hip.

49. At the location of the meeting, set by MHP Sgt. Folsom, MHP was "backed up" by two (2) Federal Bureau of Investigation (FBI) Agents, and additional offsite officers to prevent any possible flight by Weinhaus, in direct contradiction to the sworn testimony at trial and deposition that Weinhaus was not considered to a be a threat to the safety of the officers or others. Again totally unnecessary since Weinhaus would have gone to the police station to reclaim his property. Again, never argued to the jury, nor explored by Defense Counsel during trial.

50. Weinhaus drove into the parking lot at or about the agreed upon time, turned his vehicle to have its rear hatch facing the officers in order to facilitate the loading of the computer equipment into his car, lowered his driver side window, turned off the engine, and exited his vehicle, all supported by the visual evidence of the watch video, in contrast to the perspective and statements made during trial and deposition of the MHP Officers which indicated that he drove erratically, made threatening motions with the vehicle and approached in a highly charged manner. These inferences too were never challenged nor explored by Defense counsel.

51. Upon exiting his vehicle, Weinhaus exchanged some polite but useless banter with Sgt Folsom. Sgt. Folsom then, questioned Weinhaus as to his possession of the holstered weapon, to which Weinhaus in his typical manner questioned, Sgt. Folsom about his.

## THE SHOOTING OF WEINHAUS

52. The entire exchange between Weinhaus and the Officers took place in the twelve (12) seconds after Weinhaus exited his vehicle.

53. Weinhaus' gun remained in its holster the entire time and no physical evidence was introduced at trial that showed he attempted to draw his weapon.

54. The depositions of the two FBI Agents clearly stated that Weinhaus exited the vehicle and made no hostile moves towards or directed at the MHP Officers. This directly contradicted the testimony of MHP Officers Folsom and Mertens. The Defense Counsel, in another failure of competent representation did not place the FBI Agents on the defense witness list, or call them to impeach the MHP officers' lock step testimony.

55. Sgt Folsom turned to Weinhaus with his weapon drawn and command Weinhaus to get down on the ground, and immediately discharged his weapon without warning.

56. Weinhaus was hit by four(4) shots fired by the MHP Officers.

57. The bullets hit his chest, neck and head, spinning him and he fell forward to the ground and was assumed dead, as per the statements of the MHP officers.

58. The video watch continued to record the events of the assault on Weinhaus, from before the contact with the officers, to after the appearance of an emergency services vehicle and an EMT, a period of approximately 20 minutes, during which the officers offered no aid or assistance to Weinhaus and left him presumably to bleed out on the ground.

59. The officers, approached the body, handcuffed it and lifted him to remove the holstered weapon, further buttressing the fact that Weinhaus never drew his weapon.

60.  Weinhaus would spend months recovering from the wounds inflicted during this meeting and was subsequently re-arrested while still undergoing rehabilitation for the wounds, and additionally charged with the attempted murder of the two MHP Officers, and resisting arrest.

61. Weinhaus' arrest was based on the creation and distribution of a video containing Constitutionally protected political speech on YouTube under the guise of the additional charge of drug possession.

**TRIAL AND EVIDENCE**

<u>**CRUEL AND UNUSUAL PUNISHMENT**</u>

62. Weinhaus was, forced, required, and or command to wear an electronic restraining device commonly referred to as a stun cuff.

63. A stun cuff is a device designed to produce an electrical shock of 80,000 volts, causing immobilization, self-defecation, and self-urination, as per the manufacturer of the device,

64. International consensus holds that this device and the variations available world wide are considered torture and a violation of an individuals human rights.

65. There are no known no standards or procedures in this court or under the United States Supreme Court as to the use of these devices on accused persons.

66. There is no record of the trial court's authorization for the use of the device on Weinhaus.

67. Current US Supreme Court standards for the use of shackles on a defendant during trial, a physical restraint, do not comport with or otherwise fit with the mental and physical impediment/restriction that these electrical devices are designed to produce.

68. The use of this device by the Franklin County Sheriff's Department, does not fit with the purpose and goal of these devices, which is to protect officers and the general public from an otherwise uncontrollable potential physical threat.

69. Weinhaus was neither a convict, a potential physical threat, nor a capable physical threat to any person during transport, or trial.

70. Weinhaus was not subject to the existing rules as to being restrained during trial as established by the US Supreme Court, through its numerous opinions.

71. The use of the stun cuff on Weinhaus constituted an infliction of punishment on Weinhaus before guilt was determined, and a clear violation of his Eighth Amendment (8th) Rights against cruel and unusual punishment.


**TESTIMONY OF MHP OFFICERS DURING TRIAL**

72. During trial, the MHP Officers repeatedly claimed that the weapon had by Weinhaus was worn on his right side. This was also claimed during their respective depositions.

73. The MHP Officers, in deposition testimony refuted by the FBI Agents, claimed that Weinhaus attempted to draw his weapon, take a defensive stance and to do so in the seconds after exiting his car.

74. The MHP Officers repeatedly claimed that an unskilled, untested, untrained individual could draw a 9mm pistol from a fully covered retention holster in a period of time that would constitute a realistic threat to the Officers.

75. Neither the deposition testimony of the uncalled FBI Agents, or the video presented by the Defense taken from the watch camera-recorder which was played during trial supported these Officers claims. Again, Defense Counsel didn't call the FBI Agents to testify, and refute the testimony of the MHP Officers.

76. A frame/image 'capture' from the watch video clearly established that the weapon carried by Weinhaus was worn on his left side.

77. The image, is a full body reflection of Weinhaus in the rear driver side tail light of Weinhaus' vehicle, and was presented as a frame grab during trial.

78. The screen capture was shown to the jury by the Defense Attorney but was never entered into evidence by Defense Counsel, and accordingly was never permitted to be viewed by the jury during deliberations, although requested and denied by the Judge after being challenged by the prosecution.

79. The image was known to the prosecutor, the judge and shown to and discussed with the jury during trial and requested by the jury and denied them by a decision of the court based on it not being properly in evidence.


**DISMISSAL OF MAIN CHARGE, TAMPERING WITH A JUDICIAL OFFICER**

80. The sole basis for the entire chain of events suffered by Weinhaus was the August 2012 YouTube video.

81. This video which was the underlying cause of the interview with the MHP Officers (their initial contact with him), the ruse to gain access to Weinhaus' home and examine Weinhaus' computers which led to the illegal acquisition and execution of a search warrant, and then the final ruse to gain his trust and facilitate his arrest which resulted in Weinhaus being shot by the MHP Officers, was dismissed by the court upon the court granting the defense's motion for acquittal of the charge of tampering with a judicial

officer and resisting arrest moments before the jury was to set to deliberate as to the entire lot of charges.

82. After the dismissal of the primary charge relating to the video, and the underlying cause of the chain of events, the court took no action to limit the use of the August 2012 video.

83. The court provided no instructions to the jury as to how the video was to be used with the absence of the underlying tampering charge.

84. The court did not act, sua sponte, in declaring a mistrial due to the inherent prejudice suffered by Weinhaus due to the repeated playing, commentary and description of the video by the State.

85. The Court did not inform the jury as to the reasoning behind the dismissal of the charge of Tampering with a Judicial Official and stated such to the Attorneys.

86. Defense Counsel did not exercise the expected competence of a professional under the circumstances by not challenging the Court's failure to take protective action on behalf of the Defendant.

87.  Weinhaus was convicted on the 10th of October 2013

88. The conviction and incarceration of Weinhaus is directly related to the publication and State prosecution of his political beliefs and opinions contained within the August 2012 video.


## CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL

89.  Weinhaus was represented by counsel during discovery, the trial and some of the state appeals.

90. Trial counsel was substantively and actually ineffective, lacking the competence expected of counsel, due to clear and obvious errors during trial, trial prep and discovery.

91. Trial Counsel's repeated failures denied Weinhaus, competent counsel as determined by the US Supreme Court, violating his 6th Amendment Rights.

92. Defense Counsel failed to place the FBI Agents on defense's witness list after learning, during their depositions, that the testimony of the Agents contradicted the assertions and testimony of the MHP officers involved in the arrest and shooting of Weinhaus.

93. Defense Counsel failed to offer into evidence, the screen capture, or to produce a still photograph for the purpose of admission, from the watch video that supported Weinhaus' claim that his pistol was holstered on the left side of his body, which contradicted the testimony of the two MHP Officers' that claimed that the weapon was on his right side.

94. Defense Counsel failed to challenge the MHP Officers testimony as to the side on which Weinhaus was carrying the 9mm pistol, or to establish Weinhaus' competence or lack thereof in the use of a firearm.

95. Defense Counsel failed to call or even associate an expert witness with the defense that could present testimony of the design, use and proper deployment of a pistol from a retention holster such as the one in use by Weinhaus.

96. All of the factors listed above are noticeable indications that impugn the capabilities of Defense Counsel as they are directly related with challenging the common thread of the Officers testimony regarding the events of the shooting.

97.  Defense Counsel lacked the ability to effectively cross examine the prosecution witnesses as seen in the trial record and described herein.

98.  Defense Counsel failed to list and call the Sheriff of the County as a witness who would
     have impeached the search warrant executed without local law enforcement involvement
     as per State statute.

99.  Defense Counsel failed to request a mistrial after the Court granted dismissal of the
     charges of tampering with a judicial officer, directly and specifically related to the
     YouTube video and after it had been played multiple times to the jury, resulting in
     substantial prejudice to Weinhaus.

100.     Defense Counsel Failed to move for a motion in limine or to dismiss the evidence
     based on the illegally obtained search warrant.

101.     Defense Counsel failed to call any witness or establish any reasonable defense
     that would support the position of Weinhaus that he was incapable of or unable to commit
     the crimes for which he was charged, including Weinhaus himself, his wife and the two
     observing FBI Agents..


**CONSTITUTIONAL PROVISIONS AND STATE APPELLATE MATTERS**

102.     The State Courts of Missouri granted no relief to Weinhaus on the claims relating
     to the Ineffective Assistance of Counsel, the matter relating to the prejudice and lack of
     evidence supporting the conviction and numerous other claims brought by Weinhaus.

103.     Weinhaus brings this action for Declaratory Relief based on the extensive,
     numerous and repeated violations of his Constitutional Rights under the Constitution of
     the United States of America, and as applicable under the Constitution of the State of
     Missouri for the purpose of vacating his conviction and regaining his freedom.

## DENIAL OF DUE PROCESS/TRIAL ERROR

104.     The Court committed reversible error when it failed to, sua sponte, declare a

mistrial after granting defense's motion for acquittal on the charge of tampering with a

judicial officer and resisting arrest. This error was prejudicial to Weinhaus as the video of

August 2012 was the sole reason for the interaction with the MHP officers and the entire

chain of events that unfolded thereafter. Had it not been for the video, there would have

been no investigation.

105.     The Court committed reversible error when it failed to provide a limiting

instruction to the jury regarding the use of the video and its relation with the dismissed

charges of tampering with a judicial officer and resisting arrest, again prejudicing

Weinhaus in the eyes of the jury.

106.     The Court committed reversible error when it failed to allow the jury access to the

still frames of the Defendant, presented during trial and not objected to at that time by the

prosecution, which were 'grabbed' from the video, showing the true position of Weinhaus'

firearm. These images directly contradicted and ultimately undermined the claims of both

MHP Officers as to the side of the body on which Weinhaus was carrying his weapon,

thereby supporting the assertion of Weinhaus that the gun was on his left side, and would

have contradicted the claim that Weinhaus was drawing a weapon at the time of the

altercation with the officers.

107.     The Court committed reversible error when it influenced the outcome of the trial by denying demonstrative evidence by the defense that established substantial doubt as to the validity and truthfulness of the statements of the testifying MHP officers.

108.     The Court committed reversible error when it authorized or had reason to know, that Weinhaus was being forced to wear an electric stun device during trial without establishing proper grounds, causation or procedures for its use.

109.     The Court committed reversible error when it allowed Weinhaus to be subject to unreasonable duress during the trial by being required to wear a stun cuff device, which restrained his mental state, and overall participation in his defense.

110.     On the 25th of November 2013, Weinhaus was sentenced by the trial judge to serve thirty plus (30+) years in prison, after a jury trial that which Weinhaus maintains is against the weight of the evidence.


**CRUEL AND UNUSUAL PUNISHMENT**

111.     Weinhaus was forced, required, and or command to wear an electronic device commonly referred to as a stun cuff.

112.     A stun cuff is a device designed to produce an electrical shock of 80,000 volts, causing immobilization, self-defecation, and self-urination, as stated by the manufacturer.

113.     International opinion and the general consensus in the United States holds that this device and the numerous variations available world wide are considered torture, demeaning and a violation of an individuals human rights.

114.     There are no standards as to the use of these devices on accused persons.

115.    Current US Supreme Court standards for the use of shackles, a physical restraint, during trial, do not comport with or otherwise fit with the mental and physical impact that these devices produce.

116.    The use of this device by the Franklin County Sheriff's Department, does not fit with the purpose and goal of these devices, which is to control a known and potential threat to an officer, other persons, or the safety of the general public.

117.    Weinhaus was neither convicted of a crime at the time of its use, nor a realistic physical threat to any person during transport, or trial, as he is roughly 5'8″ tall and 145lbs, with a stringy build.

118.    Weinhaus was not subject to the accepted and existing rules as to being restrained during trial as established by the US Supreme Court.

119.    There is no record of the courts authorization for the use of the device on Weinhaus.

120.    The use of the stun cuff on Weinhaus constituted an imposition of punishment on Weinhaus before guilt was determined.

**<<<<<THE REST OF THIS PAGE LEFT INTENTIONALLY BLANK>>>>>**

# CLAIMS FOR RELIEF

## VIOLATION OF US CONSTITUTION, 1ST AMENDMENT, FREEDOM OF SPEECH/PRIOR RESTRAINT

121.    Plaintiff incorporates and hereby adopts the previous paragraphs (1-120) as if restated herein.

122.    Plaintiff is a publisher and distributor of religious and political commentary.

123.    Plaintiff has run for political office several times and believes that it is his responsibility and that of all free men to hold 'the feet to the fire' of elected officials as to their responsibilities and limited authority under the US Constitution.

124.    Plaintiff is a known quantity in political and social circles, and in particular in the county and counties surrounding his home.

125.    By reason and belief, the initiating investigation was precipitated by a complaint initiated by a judicial official that was offended by the contents of the video posted by Plaintiff on August 16, 2012.

126.    Plaintiff was interviewed by officers of the Missouri Highway Patrol (MHP), after the publication of his video of August 16th 2012 at his home based on the complaint filed by a judicial official and instructions from their commanding officers.

127.    The Plaintiff's computers, and other electronic devices and accessories, were confiscated on the basis of an illegally acquired search warrant, preventing Weinhaus from producing further religious and political commentary videos and publishing his newspaper from which he gets his nom de plume, "BulletinMan".

128.     Weinhaus' arrest, after being shot by the officers, was based on the creation and

distribution of a video containing Constitutionally protected political speech on YouTube.

129.     The arrest of Weinhaus was a prior restraint on his exercise of his 1st Amendment

Rights. It resulted in silencing him, and violating his 1st Amendment Right to Free Speech

under the US Constitution and Freedom of Thought and Conscious under the Missouri

State Constitution, all predicated on the offense taken by a judicial official of its contents

and statements.

130.     The charges directly related to and stemming from the video of August 2012,

tampering with a judicial officer, were dismissed by the trial court pursuant to granting a

motion for acquittal from the defense.

131.     The trial court did not notify the jury as to the reasons behind the dismissal, as

stated by the trial judge in an on the record conversation with the Prosecutor and the

Defense Counsel.

132.     The trial court did not strike the video from evidence, did not restrict its use by

the jury, and did not provide any instructions relating to its applicability and function

after the charge related to it was dismissed severely prejudicing Weinhaus.

133.     The August 2012 video was the cornerstone of the prosecutions case against the

Plaintiff during his state trial.

134.     The vitriolic but protected content of the video were the predicates on which

Weinhaus'conviction is based

135.     The illegal search, assault, arrest, and conviction violated Weinhaus' 1st

Amendment Rights under the US Constitution to speak and publish political commentary

to the general public and that this restraint was directly related to the actions of state and local political authorities of the State of Missouri in violation of those protected rights.

136.     Had it not been for the existence of the video, the MHP officers would never had visited Weinhaus' home, would never had seized Weinhaus' computers, would not have used a ruse to arrest Weinhaus, would not have had the opportunity to assault him with gunfire and Weinhaus would never had been convicted of a crime he was incapable of committing. None of this would have happened had it not been for the state actors, acting under color of law, in a clear and orchestrated attempt to silence a political opponent.

137.     Therefore, Plaintiff requests that this court exercise its authority to order the state of Missouri to vacate the judgment and conviction of Weinhaus on the grounds that the conviction is a product of a violation of his rights under the US Constitution, and as applicable the Missouri State Constitution, to order Weinhaus' immediate release, and to grant any other relief that this court finds necessary and appropriate in the interest of justice, including a retrial.

**<<<<<THE REST OF THIS PAGE LEFT INTENTIONALLY BLANK>>>>>**

## VIOLATION OF US CONSTITUTION, AMENDMENT 2,
## RIGHT TO KEEP AND BEAR ARMS & MISSOURI STATE CONSTITUTION,

138.     Plaintiff incorporates and hereby adopts the previous paragraphs (1-137) as if

restated herein.

139.     The 2nd Amendment of the United States Constitution and Article 1, Section 23

of the Bill of Rights of the Missouri State Constitution, provides for the lawful use and

possession of a firearm by a person not otherwise disqualified from having one.

140.     At the time of his arrest, Weinhaus was not a disqualified person, therefore not

prohibited from the possession or use of a firearm.

141.     On September 11, 2012 the officers of the MHP during their planned ruse to lure

Weinhaus to a meeting with the intention of arresting him, did violate his rights under

both the Missouri and US Constitution by challenging his lawful possession of a firearm

and then shooting him.

142.     Weinhaus had no knowledge of or indication that the meeting he was attending

with the officers was for the purpose of executing an arrest warrant against him, nor was

such information conveyed to him.

143.     The MHP Officers themselves, have stated numerous times that they did not view

Weinhaus as a threat, and coordinated their ruse at the meeting accordingly.

144.     At his arrest, Weinhaus was charged with the attempted murder of a police officer, and armed criminal action (a Missouri criminal code enhancement) due to his possession of a firearm.

145.     The charges were and remain an affront to the Constitutional protections and rights under the US and Missouri State Constitutions and a fabrication of the arresting officers.

146.     The testimony of the MHP Officers is contradicted by the deposition testimony of the two (2) FBI Agents present at the arrest and shooting (the agents were not called during trial by defense counsel), and by the content of Weinhaus' watch video.

147.     The inclusion of the charge of Armed Criminal Action, conflicts with the rights, privileges and protections of the US and Missouri Constitutions, as it criminalizes a protected right and legal behavior during an interaction with a law enforcement officer.

148.     The conviction on the charge of Armed Criminal Action, violates the federal Constitutional rights of Weinhaus, as it criminalizes the exercise of a protected right, and violates Weinhaus' due process rights under the 5th and 14th Amendments as it does not comport with or is supported by the evidence.

149.     Therefore, Plaintiff requests that this court exercise its authority to order the state of Missouri to vacate the judgment and conviction of Weinhaus on the grounds that the conviction is a product of a violation of his rights under the US Constitution, and as applicable the Missouri State Constitution, to order Weinhaus' immediate release, and to grant any other relief that this court finds necessary and appropriate in the interest of justice, including a retrial.

## VIOLATION OF US CONSTITUTION, AMENDMENT 4,
## UNREASONABLE SEARCH AND SEIZURE, & MISSOURI STATE CONSTITUTION:

150.     Plaintiff incorporates and hereby adopts the previous paragraphs (1-149) as if

restated herein.

151.     Officers of the MHP illegally obtained a search warrant of Weinhaus' home.

152.     The illegality of the search and the violation of Missouri State Law and the 4th

Amendment of the US Constitution is based on the failure of the MHP officer to comply

with the requirements of Missouri Statute, that the local law enforcement official is to be

notified and present upon the application and execution of a search warrant by the

Missouri Highway Patrol.

153.     The warrant application is based on the alleged smell of Marijuana in Weinhaus'

home which was ten yards or more from the interview location

154.     The fabricated allegations on which the warrant was obtained were for the

purpose of illegally obtaining access to Weinhaus' computer(s) and his home.

155.     The MHP Officers, did not notify the county sheriff and obtain his or his

representatives assistance, a requirement under Missouri State Law, Missouri Revised

Statute, Section 43.200, prior to the application for and the execution of a search warrant.

156.     During the execution of the warrant, officers located and confiscated Weinhaus'

computers, three in total (3) and video equipment.

157.     Officers located a de minimis amount of marijuana, estimated at 1/10oz downstairs, on a high shelf, in a bag, another twenty or so feet from the front door of the home where they claimed to have smelled the odor.

158.     No drug related information was identified or located on the Computer(s).

159.     No evidence was offered by the prosecution as to illegal material on the computers during trial.

160.     The actual purpose of the search was to gain access to the computer(s) of the Plaintiff.

161.     The apparent purpose of the search and seizure of Weinhaus' computers was to silence a political opponent.

162.     The pretense of an alleged smell of marijuana, by only one of the two officers both trained in the identification of narcotics, lacked the basis for the search and the substantive grounds to confiscate Weinhaus'computer(s).

163.     Even had there been a smell emanating from the home as alleged, the Officers' deliberate act of leaving the located 9mm pistol, but confiscating the computer(s) supports the assertion of Weinhaus that the purpose of the warrant was to gain access to the computer(s), a clear Violation of Weinhaus' 1st and 4th Amendment Rights

164.     Therefore, the warrant to search Weinhaus' home was predicated on a false affidavit, and was for the actual purpose of seizing Weinhaus' computers and related equipment, which are a clear violation of the US and Missouri Constitutions.

165.     During a ruse perpetrated by the Officers of the MHP to gain access to Weinhaus, Weinhaus was shot and nearly killed.

166.     This unlawful use of force constitutes a further violation of Weinhaus' rights to be secure in his person under the 4th Amendment of the US Constitution, and a denial of due process.

167.     Trial testimony of both officers involved in the shooting, including the officer that shot Weinhaus made it clear that the officers did not identify Weinhaus as a threat.

168.     The attempted execution of the arrest warrant on the 11th of September was predicated on a search that violated Weinhaus' Constitutional rights and resulted in nearly causing Weinhaus' death.

169.     The conviction and incarceration of Weinhaus is based on fraudulently acquired evidence, and circumstances orchestrated by the MHP.

170.     For these reasons and those others stated within, the conviction and incarceration of Plaintiff Weinhaus should be vacated as the evidence and circumstances of his arrest, trial and conviction were based on the fruits of the poisonous tree.

171.     Therefore, Plaintiff requests that this court exercise its authority to order the state of Missouri to vacate the judgment and conviction of Weinhaus on the grounds that the conviction is a product of a violation of his rights under the US Constitution, and as applicable the Missouri State Constitution, to order Weinhaus' immediate release, and to grant any other relief that this court finds necessary and appropriate in the interest of justice, including a retrial.


**<<<<<THE REST OF THIS PAGE LEFT INTENTIONALLY BLANK>>>>>**

## VIOLATION OF US CONSTITUTION,
## DENIAL OF DUE PROCESS 5th & 14th AMENDMENTS

172.     Plaintiff incorporates and hereby adopts the previous paragraphs (1-171) as if

restated herein.

173.     Weinhaus was denied his substantive due process rights due to the occurrence of

the following during his criminal trial:

   a)   The Court committed reversible error when it failed to, sua sponte, declare a

   mistrial after granting defense's motion for acquittal on the charge of tampering

   with a judicial officer and resisting arrest. This error was prejudicial to Weinhaus

   as the video was the sole reason for the interaction with the MHP officers and the

   entire chain of events that unfolded thereafter. Had it not been for the complaint

   by the jurist regarding the contents of the video, there would have been no

   investigation.

   b)   The Court committed reversible error when it failed to provide a limiting

   instruction to the jury regarding the use of the August 2012 video and its relation

   to the dismissed charges of tampering with a judicial officer and resisting arrest,

   again prejudicing Weinhaus.

   c)   The Court committed reversible error when it failed to allow the jury access to the

   frame captures of the Defendant, presented during trial and not objected to at that

   time, which were 'grabbed' from the video, which showed the true position of

   Weinhaus' firearm (on his left side). These images directly contradicted the

statements of the officers as to the side of the body on which the Defendant was carrying his weapon, supported the claim of the Plaintiff that the gun was on his left side, and would have eviscerated the claim that Weinhaus was drawing a weapon at the time of the altercation with the officers.

d) The Court committed reversible error when it influenced the outcome of the trial by denying demonstrative evidence by the defense that established substantial doubt as to the validity and truthfulness of the statements of the testifying MHP officers.

e) The Court committed reversible error when it authorized and or had reason to know, that Weinhaus was being forced to wear an electrical restraint, a stun device, during trial without establishing proper grounds for its implementation and impacting his right to participate without interference in his own defense.

f) The Court committed reversible error when it erred in allowing Weinhaus to be subject to duress during the trial through being required to wear a stun cuff device, which restrained his movement, mental state and overall participation during the trial.

174. Taken individually or as a whole, the violations, require that this Court find that the trial of the Plaintiff Weinhaus was what is commonly referred to as a 'Kangaroo Court', and that the conviction be vacated and Weinhaus be released from custody of the State of Missouri and of the ERDCC base on the violation of his Substantive Due Process Rights.

175.     Therefore, Plaintiff requests that this court exercise its authority to order the state of Missouri to vacate the judgment and conviction of Weinhaus on the grounds that the conviction is a product of a violation of his rights under the US Constitution, and as applicable the Missouri State Constitution, to order Weinhaus' immediate release, and to grant any other relief that this court finds necessary and appropriate in the interest of justice, including a retrial.

## VIOLATION OF US CONSTITUTION
## 6th AMENDMENT, INEFFECTIVE ASSISTANCE OF COUNSEL

176.     Plaintiff incorporates and hereby adopts the previous paragraphs (1-175) as if restated herein.

177.     Plaintiff Weinhaus asserts that trial counsel was substantively and actually ineffective, providing no actual representation.

178.     The repeated failures of trial counsel denied Weinhaus the necessity and requirement of Competent Counsel as determined by the US Supreme Court in its determination and understanding of the rights protected under the 6th Amendment to the US Constitution.

179.     The claim of Ineffective Assistance of Counsel, and therefore the violation of Weinhaus' rights are based on the following:

a)   Defense Counsel failed to place the FBI Agents on defense's witness list after learning during their depositions that the testimony of the Agents contradicted the

statements and allegations of the MHP officers involved in the arrest and shooting of Weinhaus,

b)   Defense Counsel failed to offer into evidence the screen capture/grab or to produce a still photograph of the screen capture/grab for the purpose of admission from the watch video which supported Weinhaus' claim that his pistol was holstered on the left side of his body. This substantive piece of evidence would have eviscerated the testimony of the two MHP Officers' that repeatedly claimed that the weapon was positioned and holstered on his right side. This allegation by the MHP Officers was the common thread of the Officers testimony regarding the events of the shooting, and the capability of Weinhaus to effectuate such action which based on their testimony was justification for the shooting of Weinhaus,

c)   Defense Counsel lacked any ability to cross examine the prosecution witnesses denying Weinhaus competent and or effective representation during trial,

d)   Defense Counsel failed to list as a witness and to call the County Sheriff on behalf of Weinhaus to challenge the validity of the search warrants issuance and execution under Missouri State Law, which requires that a search warrant applied for by the MHP and subsequently executed by the MHP must be done so with the notification to and assistance of local law enforcement,

e)   Defense Counsel failed to object to or otherwise notify the court of the mental restraint and negative influence suffered by Weinhaus while Weinhaus was being forced to wear the Stun Device/Stun Cuff imposed on him by the Franklin County

Sheriff's Department; which was in fact a physical and mental restraint, applied without court determination of need and authority,

f) Defense Counsel failed to request a mistrial after the Court granted the dismissal of the charges of tampering with a judicial officer after the YouTube video had been played numerous times to the jury as the underlying cause and reasons behind the state's case against Weinhaus which resulted in substantial prejudice to Weinhaus, denying him a fair and unbiased trial and jury,

g) Defense Counsel failed to call any witness or establish any reasonable defense that would support the position of Weinhaus that he was incapable of or unable to commit the crimes for which he was charged and innocent thereof.

h) Defense Counsel failed by not challenging the search warrant which was the predicate for the illegal search of Weinhaus' home and resulted in an inflammatory relationship between Weinhaus and the MHP and was the predicate cause that resulted in the shooting of Weinhaus,

180. The facts, as supported by the trial record unequivocally establish that Defense Counsel lacked all professional competence and failed in all respects to provide any protection of the rights of Weinhaus.

181. Therefore, Plaintiff requests that this court exercise its authority to order the state of Missouri to vacate the judgment and conviction of Weinhaus on the grounds that the conviction is a product of a violation of his rights under the US Constitution, and as applicable the Missouri State Constitution, to order Weinhaus' immediate release, and to

grant any other relief that this court finds necessary and appropriate in the interest of justice, including a retrial.

## VIOLATION OF US CONSTITUTION
## 8[h] AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT

182.     Plaintiff incorporates and hereby adopts the previous paragraphs (1-181) as if restated herein.

183.     Weinhaus was, forced, required, and or command to wear a device commonly referred to as a stun cuff, an electrical device used to mentally and physically restrain an individual.

184.     The device is attached to the wearers legs or arms, generally in pairs, and will deliver a debilitating electrical shock upon activation, which according to the manufacturer will deliver 80,000 volts, and result in severe physical pain, self-defecation and self-urination upon activation.

185.     Activation is controlled by a remote device, held by a jailer, or other officer.

186.     The device is available in various forms, including but not limited to a belt worn around the waist and a vest worn over the chest. The arm/leg cuff is also available in pairs.

187.     Activation of the device is known to regularly cause a subject to immediately cease movement, loose control of ones bowels, urinate on oneself, and to writhe in pain on the floor further subjecting one to embarrassment, and psychical injury.

188.    Those subject to wearing such devices, have been known to suffer accidental activation of the device, and to have additional injuries from falling to the ground to impacting standing objects.

189.    The use of such a device is considered torture in many countries and by activists in the United States and does result in mental incapacitation due to the inherent fear the wearer is subject to.

190.    The US Supreme Court has opined widely on the use of physical restraints, shackles, during trial and the requirement that they are to be used to protect the trial, its participants, the jury, counsel, etc, and to maintain the decorum of the court room without impacting the juries impression of the accused, or substantively impacting the ability of the accused to participate in his own defense, but has not made a determination as to the appropriateness and use of electronic restraints in the court room on an accused person.

191.    The US Supreme Court has held that the use of physical restraints on an accused are to be done sparingly, and after determination of the court as to the need of shackles, based substantially on the defendants likelihood or history of dangerous behavior.

192.    No examination of underlying facts or circumstances and resulting determination was made by the court relating to Weinhaus.

193.    Weinhaus posed no known threat to the decorum, validity or conduct of the court and its procedures.

194.    Weinhaus had no prior history of violence, nor was there an indication that such violence would occur.

195.     Weinhaus was forced to wear a stun cuff by the Franklin County Sheriff's Dept.,
which maintained control over the device during the trial and over his participation in his
own defense.

196.     Information procured during a Freedom of Information/Sunshine law request,
indicated that the device used on Weinhaus was purchased at or about the time of
Weinhaus' trial and apparently for their use on him.

197.     There is no record of the courts authorization for the use of the device.

198.     There is no determination made from which counsel could object or challenge.

199.     There was no basis on which Weinhaus could be assured that the device would
not activate or be activated during trial; no formally established rules of use and behavior.

200.     The use of the device on Weinhaus was without cause.

201.      Weinhaus, was not a threat to the decorum of the tribunal.

202.      Weinhaus, was not a threat to the safety of the participants to the tribunal.

203.      Weinhaus was not subject to the existing rules as to being restrained during trial
as established by the US Supreme Court.

204.      Weinhaus was subject to deliberate, degrading, imposing threats during the trial
while wearing the stun cuff.

205.     The use of the stun cuff constituted an infliction of punishment on Weinhaus
before guilt was determined, a violation of his rights under the US Constitution.

206.     The use of the device and those similar are considered by much of the
international community to be torture, and that such use was not justified nor authorized
by the court and is a violation of the US Constitution and the 8th Amendment.

207.     The impact of the device on Weinhaus was substantial and affected his ability to actively participate in his own defense, for fear of its activation.

208.      Weinhaus was subject to a mental restraint. He was fearful of participating in his own defense, was unaware of any use policy, any training and thresholds under which such a device would be activated, and knew only that he had an electrical device that would cause pain and embarrassment to him if activated; but didn't know under what circumstances if at all it would be. A constant fear permeated his mind during trial.

209.     The Franklin County Sheriff's Department, by using such a device, exercised an undue & substantial influence on Weinhaus and undermined the validity of the fact finding and guilt phase of the trial which resulted in denying Weinhaus his right to participate in his own defense without fear of repercussion.

210.     The lack of procedural safeguards surrounding the device, denied Weinhaus the very protections of the US Constitution that are explicitly necessary during a criminal proceeding.

211.     The use of the stun cuff, and the acquiescence of the court, are direct violations of the standards relating to restraining an accused during trial.

212.     Whereby restraints are specific to physical activity, stun devices cause a restraint that is not only physical but mental. The use of these devices affect the mental state of the person forced to wear them and creates an ongoing state of apprehension and fear.

213.     Therefore, Plaintiff requests that this court exercise its authority to order the state of Missouri to vacate the judgment and conviction of Weinhaus on the grounds that the conviction is a product of a violation of his rights under the US Constitution, and as

applicable the Missouri State Constitution, to order Weinhaus' immediate release, and to grant any other relief that this court finds necessary and appropriate in the interest of justice, including a retrial.

## VIOLATION OF US CONSTITUTION,
## AMENDMENT 14, DENIAL OF EQUAL PROTECTION

214.     Plaintiff incorporates and hereby adopts the previous paragraphs (1-213) as if restated herein.

215.     As as citizen of the United States, Weinhaus was denied the equal protections of the United States Constitution and as a citizen of the State of Missouri, the protections of the Constitution of the State of Missouri in violation of the equal protection clause of the 14th Amendment to the United States Constitution and its application to the states.

216.     In the numerous issues raised in the sections above the actions of the state agencies taken individually and as a whole denied Weinhaus those protections which are specifically designed to assure that an accused person receives not only procedural due process but substantive due process during a trial.

217.     Weinhaus was subject to continuous negative influence that is considered to be torture by the civilized world, during his trial.

218.     Weinhaus was denied competent Counsel, in violation of the 6th Amendment to the US Constitution, and to the respective section(s) of the Missouri State Constitution.

219.     Weinhaus was denied the substantive due process afforded persons accused of crimes, under the State and Federal Constitutions.

220.      The shooting of Weinhaus by MHP Officers was without provocation and need, and violated his 4th Amendment Rights to be secure in his person, and

221.      The the conviction of Weinhaus was in opposition to the weight of the evidence presented to the jury, and the conviction should have been set aside by the Trial Judge.

222.      Weinhaus was denied his 5th Amendment rights as to due process, when the trial court committed substantive errors resulting in an incorrect decision based on prejudicial and incomplete evidence.

223.      The arrest, trial and conviction of Weinhaus was based on state action and in violation of Weinhaus' 1st Amendment protected political speech, and the actions of the State of Missouri through its subdivisions and judiciary acted for the purpose of silencing a political adversary, which constitutes a prior restraint.

224.      Based on these factors and the ones identified earlier in this complaint, the protections of the US Constitution, and the equal protection of the law under both the Constitution of the State of Missouri and the United States have been denied to Weinhaus, resulting in a miscarriage of justice to be repeated daily over the next 30+ years (the remaining term of his sentence).

225.      Therefore, Plaintiff requests that this court exercise its authority to order the state of Missouri to vacate the judgment and conviction of Weinhaus on the grounds that the conviction is a product of a violation of his rights under the US Constitution, and as applicable the Missouri State Constitution, to order Weinhaus' immediate release, and to grant any other relief that this court finds necessary and appropriate in the interest of justice, including a retrial.

**PRAYER FOR RELIEF**

Jeffrey Weinhaus, requests that this court grant the relief requested, that he be set free of the confines and control of the ERDCC and the State of Missouri, and that the trial and conviction under which his incarceration is based be vacated as a violation of his Rights under the Federal and State Constitutions, that the State be bared from further prosecution of Weinhaus on the grounds alleged in the criminal complaint, and any other relief that this court finds is appropriate and necessary in the interests of justice, including if necessary a retrial.

Dated this 10th day of July 2017

/s/ Warren R. Markowitz, Esq.
Warren R. Markowitz
The Markowitz Law Firm
7260 W. Azure Dr, Suite 140-100
Las Vegas, NV 89130
Office: 702-749-5831/ Fax 702-749-5832
Email: Warren@warrenmarkowitzesq.com
Http://MarkowitzLawFirm.com