**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY WEINHAUS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:17 CV 1941 DDN |
| | ) | |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This action is before the court upon the amended petition of Missouri state prisoner Jeffrey Weinhaus for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons discussed below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

Petitioner Jeffrey Weinhaus was convicted by a jury in the Circuit Court of Franklin County, Missouri, of unlawful felony possession of morphine, misdemeanor possession of marijuana, first-degree assault on a law enforcement officer, and armed criminal action, for which he was sentenced to concurrent terms of imprisonment for two, one, thirty, and thirty years, respectively. His conviction was affirmed by the Missouri Court of Appeals on direct appeal. *State of Missouri v. Weinhaus*, 459 S.W.3d 916 (Mo. Ct. App. 2015). Petitioner moved for post-conviction relief under Missouri Supreme Court Rule 29.15, which was denied by the Circuit Court without a hearing. The Court of Appeals affirmed. *Weinhaus v. State of Missouri*, 501 S.W.3d 523 (Mo. Ct. App.

2016).  After initially seeking relief in this Court under 28 U.S.C. § 2201, petitioner filed the instant petition under 28 U.S.C. § 2254.

In its opinion regarding the motion for post-conviction relief, the Missouri Court of Appeals described the facts indicated by the trial evidence that supported the jury's verdict thus:

> On August 18, 2012, Missouri State Highway Patrol Sergeant James Folsom (Sergeant Folsom) received a phone call from Missouri Circuit Court Judge Kelly Parker regarding a video Movant had posted online, in which Movant had threatened judicial officers, including Judge Parker. Sergeant Folsom reviewed the video. In it, Movant stated that "the People" will "fire" various Missouri officials including the State Courts Administrator, as well as various circuit judges, lawyers, and policemen. Movant also generally referenced corrupt officials and "[his] right to blast you mother [...]ers out of there if we have to."  Movant also stated "we have the right to remove you use [*sic*] of force." Movant stated that "September 14 will be the last day of the Defacto Court.  You all [are] fired and will be considered trespassers after that time."
>
> Sergeant Folsom also met with Crawford County officials.  Sergeant Folsom discovered that the 911 dispatch center and the courthouse had increased their security because Movant had come to both places and "had put everyone on edge." Sergeant Folsom consulted with other law enforcement officials, and they decided Sergeant Folsom should visit Movant in order to determine whether he actually intended to harm anyone.
>
> On August 22, 2012, Sergeant Folsom and Corporal Scott Mertens (Corporal Mertens) went to Movant's home in Franklin County, Missouri. When Movant stepped outside his residence to speak with the State Troopers, they detected a strong odor of marijuana. After discussing the videos with Movant, the State Troopers asked Movant whether there was marijuana in the house.  Movant replied that there was not. Sergeant Folsom and Corporal Mertens detained Movant until other State Troopers arrived, and Sergeant Folsom obtained a search warrant to search the house. During the search of Movant's basement, State Troopers seized drug paraphernalia, scales, a plastic container holding marijuana, a bag containing marijuana, and a small tin containing pills that were later identified as morphine.  They also seized computer equipment and video cameras. They found a gun in the nightstand of a dresser in the master bedroom of the home, but it was properly registered to Movant's wife and was not evidence of any crime, so they did not seize it.  After the search,

Sergeant Folsom gave Movant an inventory of the items they had seized as well as Sergeant Folsom's business card.

Shortly thereafter, Movant began sending emails to Sergeant Folsom asking for the name of Sergeant Folsom's attorney. Movant also filed a writ of replevin requesting his computers back. Movant called Sergeant Folsom's supervisors complaining that Sergeant Folsom had stolen Movant's computer, and Movant also posted a video online in which he said he "should have placed a bullet in [Sergeant Folsom's] head." Movant also posted a video stating he was at his home with his guns loaded.

In the meantime, Sergeant Folsom had met with his supervisors, and they had decided that they were going to arrest Movant for possession of drugs and judicial tampering. Sergeant Folsom contacted Movant and arranged to meet in a public place. Sergeant Folsom did not want to go to Movant's home, due to what Movant had said in the videos, and Sergeant Folsom was pleased to hear Movant make the initial suggestion to meet in a public place. Sergeant Folsom told Movant this meeting was for the purpose of returning Movant's computer equipment, but Sergeant Folsom planned to arrest Movant when they met. Sergeant Folsom also sought to have other law enforcement officials accompany him and Corporal Mertens when they met Movant. Sergeant Folsom contacted the Franklin County Sheriff's Department to assist in serving the arrest warrant, but no one was available. Sergeant Folsom then contacted two FBI agents they had worked with, who agreed to go.

The State Troopers and federal agents were all at the gas station where they had agreed to meet Movant before Movant arrived. Sergeant Folsom and Corporal Mertens parked in a visible area near the road so they could see Movant arrive, and the FBI agents were in plain clothes and were on the other side of the gas station. Movant pulled into the gas station at a high rate of speed and was removing his seatbelt as he drove past the State Troopers. Once Movant parked, Sergeant Folsom walked toward Movant's vehicle and began to talk to him. Sergeant Folsom was carrying a manila envelope containing the arrest warrant. Sergeant Folsom told Corporal Mertens to go to the back of the police vehicle and open the trunk so that Movant would believe Corporal Mertens was retrieving Movant's computer equipment.

Sergeant Folsom testified that Movant had exited his vehicle and was facing Sergeant Folsom in a "bladed position": at a 45-degree angle, with one foot in front of the other. Sergeant Folsom stepped around Movant's vehicle and saw a holster on Movant's right hip that contained a handgun.

While asking Movant why he had a gun, Sergeant Folsom removed his own handgun from the holster on his hip and held it down by his side in front of his hip. Movant said he was authorized to have a gun, and he moved his right hand to his holster and began manipulating the flap on the holster. Sergeant Folsom ordered Movant to get down on the ground, and Movant did not comply, but turned and squarely faced Sergeant Folsom. Movant opened the flap of the holster and placed his hand on the buttstock of the weapon.

Sergeant Folsom raised his weapon and again ordered Movant to get on the ground. Corporal Mertens also ordered Movant to get down on the ground. Movant replied, "you're going to have to shoot me" and continued to draw his weapon. Sergeant Folsom saw the gun nearly out of the holster, and at that point he fired two shots into Movant's chest and one into Movant's head. Corporal Mertens also fired a shot at Movant because he believed Movant was a threat to Sergeant Folsom. Sergeant Folsom heard the shot and fired an additional shot into Movant's head. Movant collapsed onto the ground. Corporal Mertens called an ambulance while Sergeant Folsom handcuffed Movant and took Movant's gun from his hand, with FBI Agent Mike Maruschak covering Sergeant Folsom.

The State charged Movant with possession of a controlled substance (morphine), tampering with a judicial officer, possession of up to 35 grams of marijuana, assault of a law enforcement officer in the first degree (against Sergeant Folsom), assault of a law enforcement officer (against Corporal Mertens), two counts of armed criminal action, and resisting arrest. At trial, after the State presented testimony from Sergeant Folsom, the State offered a video into evidence. The video was taken from a camera that was on a watch that Movant had been wearing at the gas station, and it captured the entire incident. At the close of the State's evidence at trial, the trial court granted Movant's motion for judgment of acquittal on the charges of tampering and resisting arrest. The trial court concluded that Movant's threats against judicial officers in his video were not sufficient to support the charge of tampering, and that there was no evidence Movant was aware he was being arrested when he met the State Troopers at the gas station.

*Weinhaus v. State of Missouri*, 501 S.W.3d 523, 525-27 (Mo. Ct. App. 2016).

## II.  PETITIONER'S PLEADINGS IN FEDERAL COURT

Petitioner commenced this action on July 10, 2017, by filing a judicial complaint in this Court.  (Doc. 1).  In that complaint of 225 enumerated paragraphs he sought a declaratory judgment under 28 U.S.C. § 2201 and injunctive relief that he be set free of Missouri state imprisonment, that the judgment of conviction be vacated, that he be barred from further prosecution, and any other appropriate relief, including a retrial.  (*Id.* at 41).  He joined as defendants the Director of the Missouri Department of Corrections, the Warden of the Missouri Eastern Reception Diagnostic and Correctional Center, the Attorney General of Missouri, the Sheriff of Franklin County, and the Commanding Officer of the Missouri Highway Patrol.  (*Id.*).  Following defendants' motions to dismiss for failure to state a claim, petitioner Weinhaus voluntarily dismissed his claims against all defendants, except Warden Troy Steele.  (Doc. 23).

On November 3, 2017, petitioner filed his amended petition for habeas corpus relief under 28 U.S.C. § 2254.  (Doc. 25).  He alleges six grounds for relief:

(1)     His Sixth Amendment right to effective assistance of counsel was violated because his defense counsel:

    (a)     failed to place FBI agents on the defense's witness list;

    (b)     failed to offer a screen capture or still photographs of the video made by his digital watch as evidence;

    (c)     generally lacked the ability to cross-examine prosecution witnesses;

    (d)     failed to call the County Sheriff as a witness;

    (e)     failed to object to the stun cuff device worn by petitioner at trial;

    (f)     failed to request a mistrial after the judicial tampering charges were dismissed by the trial judge;

    (g)     failed to call witnesses to show that petitioner was incapable of committing the crimes he was convicted of;

    (h)     failed to demand that the jury be advised of why the trial court dismissed the charge of tampering with a judicial officer; and

    (i)     failed to move to strike the YouTube video after the judicial tampering charge was dismissed.

(2)      His First Amendment right to freedom of speech was violated, because the purpose of his arrest was to silence his political activities, and, while the search warrant was issued based on an alleged smell of marijuana, the purpose of the search was to seize petitioner's computers. Petitioner further alleges that the evidence so obtained should have been excluded as fruit of the poisonous tree.

(3)      The Fourth Amendment was violated, because the search warrant was granted for drug-related reasons, but the searching officers seized his computer equipment and did not comply with the warrant's procedural requirements.

(4)      The Eighth Amendment prohibition of cruel and unusual punishment was violated, because he was required to wear a stun device at trial.

(5)      His Fifth and Fourteenth Amendment right to due process was violated when the court did not declare a mistrial *sua sponte* following petitioner's acquittal on the judicial tampering and resisting arrest charges; when the court did not provide a limiting instruction relating to the YouTube video; and when the court did not allow the jury to view screen captures of the wrist watch video.

(6)      His Fourteenth Amendment right to equal protection was violated for many of the reasons described in grounds 1-5.

Respondent contends that some of petitioner's claims in Ground 1 are procedurally barred, because he failed to properly raise them during the post-conviction relief motion proceedings, while the remaining claims were rejected on the merits by the Missouri Court of Appeals. Respondent contends that the claims listed in Grounds 2 and 3 are procedurally barred, and to the extent the claims in Grounds 2 and 3 are Fourth Amendment claims, they are not cognizable in this § 2254 habeas proceeding pursuant to the Supreme Court's ruling in *Stone v. Powell*, 428 U.S. 465 (1976). Respondent contends that Ground 4 is not a challenge to current confinement cognizable under § 2254, is procedurally barred, and is without merit. Respondent contends that some of the claims raised in Ground 5 were correctly refuted on the merits by the Missouri Court of Appeals, and the remainder are procedurally barred and without merit. Respondent contends that the various claims asserted in Ground 6 fail for reasons discussed regarding

Grounds 1-5, while any new claims raised within this ground are either procedurally barred or correctly decided on the merits by the Missouri Court of Appeals.

## III.  EXHAUSTION AND PROCEDURAL BAR

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). A federal court may not consider habeas claims unless the petitioner has exhausted procedures for litigating those claims in the state courts, there is an absence of available corrective process in the state courts, or the state process is "ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(ii). A state law remedy is not considered exhausted if the petitioner has the right to raise the ground by an available state law procedure. 28 U.S.C. § 2254(c).

A federal court reviewing a state conviction "may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (quoting *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009)). "In Missouri, 'a claim must be presented at each step of the judicial process in order to avoid default.'" *Arnold*, 675 F.3d at 1087 (quoting *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994)). A procedural bar prevents adjudication on the merits unless (1) petitioner can show legally sufficient cause for his default in the state courts and actual prejudice resulting from the alleged violation of federal law, or (2) petitioner can show that failure to consider his federal habeas grounds would result in "a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However, if a state court decides an issue on the merits despite a procedural default, "no independent and adequate state ground bars consideration of that claim by a habeas court." *Sweet v. Delo*, 125 F.3d 1144, 1150 (8th Cir. 1997).

Under Missouri law, there are two options available to a petitioner seeking relief from his conviction following a trial:  (1) direct appeal; and (2) a motion for post-

conviction relief under Missouri Supreme Court Rule 29.15.  A Rule 29.15 motion is the proper avenue for contesting the constitutionality of a conviction or sentence, including ineffective assistance of counsel.  Mo. S. Ct. R. 29.15(a).

On direct appeal to the Missouri Court of Appeals, petitioner alleged eight points of error:  (1) there was insufficient evidence to support his conviction on the attempted assault charge; (2) the trial court erred in overruling petitioner's motion for judgment of acquittal at the close of evidence and that there was insufficient evidence to support the jury instruction regarding first degree assault of a law enforcement officer; (3) the trial court plainly erred by submitting the jury instruction regarding first degree assault of a law enforcement officer; (4) there was insufficient evidence to support the possession of morphine charge; (5) there was insufficient evidence to support the possession of marijuana charge; (6) the trial court erred by denying petitioner's motion to sever the count of judicial tampering (of which petitioner was ultimately acquitted) from the remaining counts, because evidence relevant for the judicial tampering charge was irrelevant and inflammatory on the other charges; (7) the trial court plainly erred by failing to declare a mistrial *sua sponte* after granting petitioner's motion for judgment of acquittal on the judicial tampering charge; and (8) the trial court erred by overruling petitioner's objections to the state's evidence of other weapons found in petitioner's car.  (Doc. 27-10, at 19-27).  The Circuit Court's judgment was affirmed.  (Doc. 27-14).

Following the Court of Appeals' affirmance on direct appeal, petitioner filed a motion for post-conviction relief under Missouri Rule 29.15.  In that motion he alleged specifications of ineffective assistance of counsel that included the following, which were denied by the Circuit Court:  (1) counsel failed to call a crime scene forensic expert at trial; (2) counsel failed to call the FBI agents who were present at the gas station as witnesses; (3) counsel failed to call Levi Weinhaus to testify that petitioner wore his holster on his left hip while driving his vehicle instead of on his right, contradicting the testimony of the police officers; and (4) counsel failed to call a video expert to testify that petitioner's words on the video were actually "you don't have to shoot me," rather than "you're going to have to shoot me."  (Doc. 27-17, at 14-17).  The Missouri Court of

Appeals considered each of these points on the merits and concluded that petitioner did not allege facts which, if true, would establish that his trial counsel's assistance was constitutionally ineffective. *Weinhaus*, 501 S.W.3d at 531.

Congress has authorized this Court to consider procedurally barred grounds and to dismiss them, if they are without merit. 28 U.S.C. § 2254(b)(2).

## IV. STANDARD OF REVIEW

For those federal habeas grounds that were raised and decided on their merits by the Missouri courts, Congress has authorized federal habeas corpus relief only when the state court adjudication of such a ground:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (Antiterrorism and Effective Death Penalty Act (AEDPA)).

State court decisions are "contrary to" clearly established federal law only when they reach conclusions on questions of law opposite Supreme Court decisions, or if they reach decisions contrary to Supreme Court decisions on materially indistinguishable facts. *Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "A state court decision involves an 'unreasonable application' [of federal law] when it identifies the correct legal rule, but unreasonably applies it to the facts" of a prisoner's case. *Arnold*, at 1085; *Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). Review under § 2254(d)(1) is limited to the record that was before the state court which adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

Determinations of factual issues made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). For habeas relief under § 2254(d)(2), a petitioner must show that "the state court's presumptively correct factual findings do not enjoy support in the

record." *Evenstad*, 470 F.3d at 782. The petitioner must rebut the presumption that state court factual findings are correct by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

For those grounds asserted by petitioner that were not ruled on their merits by the Missouri courts, the pre-AEDPA standard for habeas review governs. *Gingras v. Weber*, 543 F.3d 1001, 1003 (8th Cir. 2008) ("Because [petitioner's] apparently unexhausted claim was not adjudicated on the merits, we likely should apply the pre-AEDPA standard of review, rather than the deferential standard of 28 U.S.C. § 2254(d).") (internal citations and quotations omitted). In order to prevail under this pre-AEDPA standard, petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial, or that the verdict likely would have been different absent the now challenged [defect]." *Robinson v. Crist*, 278 F.3d 862, 865-66 (8th Cir. 2002).

The AEDPA limits entitlement to an evidentiary hearing in this Court. If a federal habeas petitioner failed to develop the factual basis of a federal habeas ground in state court proceedings, no evidentiary hearing is permitted, unless petitioner shows that:

(A)    the claim relies on

    (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. 2254(e)(2).

Because this limitation only applies to petitioners who failed to develop the factual basis of their claim in state court proceedings, the first question is whether the relevant facts on petitioner Weinhaus's grounds were developed in state court, and, if not, whether the lack of facts was due to a failure by petitioner. Such a failure is established by lack of

diligence or some greater fault attributable to petitioner or his counsel. If petitioner has diligently pursued an issue in state court, he is not precluded from seeking an evidentiary hearing. *Townsend v. Sain*, 372 U.S. 293 (1963) (overruled on other grounds by *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992)).

However, if the record before the court precludes habeas relief, then this Court is not required to hold an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Otherwise, "the decision to grant such a hearing rests in the discretion of the district court." *McGehee v. Norris*, 588 F.3d 1185, 1200 (8th Cir. 2009) (quoting *Schriro*, 550 U.S. at 474). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474; *see also Cullen v. Pinholster*, 563 U.S. 170, 183 (2011).

The factual record in the Missouri state courts is sufficient to rule the merits of petitioner's federal habeas grounds. Petitioner is not entitled to an evidentiary hearing in this Court.

## V. DISCUSSION

### A. Ground 1

In Ground 1, petitioner alleges that his trial counsel rendered constitutionally ineffective assistance in several specified ways. In order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Also, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that those errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Review of counsel's performance is "highly deferential." *Id*. at 689. Petitioner must show that any alleged error actually adversely affected his defense. *Id*. at 693. The applicable standard is whether there is a "reasonable probability" (that is, "a probability

sufficient to undermine confidence in the outcome") that, but for counsel's error, the result of the trial would have been different. *Id.* at 694. Further, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

Petitioner Weinhaus alleges the following specifications of constitutionally ineffective assistance of counsel:

### (a) FBI agents as defense witnesses

Petitioner argues that defense counsel failed to include the FBI agents as defense witnesses after discovering during their depositions that their testimony contradicted the statements of the Missouri Highway Patrol Officers regarding on which hip petitioner had his weapon holstered.

The decision whether to call a witness is considered a matter of trial strategy and habeas relief will not be granted if counsel's action was not "outside the wide bounds of strategic choices that counsel is afforded." *Hanes v. Dormire*, 240 F.3d 694, 698 (8th Cir. 2001). In rejecting this ground, the Missouri Court of Appeals stated,

> Movant alleged in his motion that both agents testified in depositions that they did not see a holster on Movant's right hip. Movant further alleged that had a holster been on Movant's right hip, the agents would have been able to see it if Movant had been standing in a "bladed position" toward Corporal Mertens or squarely facing Corporal Mertens. However, there was no evidence at trial that Movant faced Corporal Mertens in either of these positions; rather, the testimony was that Movant faced Sergeant Folsom, and that Corporal Mertens was at a different angle. There was also testimony that the FBI agents were further away, across the parking lot. Therefore, Movant has not alleged unrefuted facts that the gun would have been visible to the agents had it been on Movant's right hip. Accordingly, even assuming the testimony that the agents did not see a gun on Movant's right hip was true, this does not provide Movant a viable defense.

> Moreover, while Movant alleges in a conclusory fashion that no reasonable trial strategy justified his trial counsel's failure to call the agents as witnesses, Movant has not alleged facts that would rebut the presumption

that his counsel's decision was anything other than reasonable trial strategy. Movant's trial counsel argued in closing argument an adverse inference based on the State's failure to call the agents to corroborate Sergeant Folsom's and Corporal Mertens' testimony, which he would not have been able to do if he had called them to testify. Further, Movant makes no allegation that the agents' testimony would have negated an element of the crimes for which he was convicted; specifically, Movant does not allege they would testify that Movant was not disregarding Sergeant Folsom's directives to get on the ground, that Movant did not reach for a gun, and that Movant did not have a gun in his hand when they approached him after he fell to the ground.

*Weinhaus v. State of Missouri,* 501 S.W.3d 523, 529-30 (Mo. Ct. App. 2016). Clearly the Missouri courts for good reasons attributed to reasonable trial strategy counsel's not calling these witnesses as defense witnesses. And in doing so, the state courts did not reach a decision that was contrary to clearly established federal law nor was their decision based on an unreasonable determination of the facts.

### (b) Video still photos as defense evidence

Petitioner next argues that defense counsel failed to show the jury screen capture photos from a video taken by the watch he was wearing, which would have assertedly supported his claim that his weapon was holstered on his left, rather than right, hip. However, as the Missouri Court of Appeals noted, the jury had already viewed the video itself. *Id.* at 531. In determining that petitioner had not been entitled to an evidentiary hearing in the circuit court and that the record disproved this ground for relief, the Missouri Court of Appeals reasoned that petitioner's counsel was not ineffective for failing to call a forensic video expert as a witness:

However, Movant's argument here is simply that this testimony regarding the body movements an expert could have inferred from the video taken from the watch on Movant's wrist that day would impeach the testimony of Sergeant Folsom that Movant began in a "bladed position" and then turned to face Sergeant Folsom directly. The failure to offer testimony that would have only impeached the testimony of a State's witness does not warrant relief for ineffective assistance of counsel. *Whited v. State*, 196 S.W.3d 79,

82 (Mo. App. E.D. 2006). Rather, "when the testimony of the witness would *also* negate an element of the crime for which a movant was convicted, the testimony provides the movant with a viable defense." *Id*. (citing *Williams v. State*, 8 S.W.3d 217, 219–20 (Mo. App. E.D. 1999)) (emphasis added).

Here, whether Movant moved from a "bladed position" to facing Sergeant Folsom squarely is not an element of any of the crimes for which he was convicted. The jury viewed the video, and Movant's counsel, while not arguing the video contradicted this particular testimony about Movant's body positioning, did argue that the video was inconsistent with the State Troopers' testimony in a number of ways. Even assuming *arguendo* Movant did not move from a "bladed position" to squarely facing Sergeant Folsom, the evidence that he was in the act of drawing a weapon when Sergeant Folsom shot him would be undisturbed. Thus, Movant has failed to allege this testimony would have provided him with a viable defense. Movant was therefore not entitled to an evidentiary hearing on this claim, and the motion court did not clearly err in denying his motion in this respect. *See McIntosh*, 413 S.W.3d at 328.

(*Id*.) The state court decision in this regard clearly indicated that defense counsel's not calling a forensic expert to testify about what the video showed did not result in a jury verdict that was unreliable. The decision was not contrary to clearly established federal law, nor did it reach its decision based on an unreasonable determination of the facts.

### (c) Cross-examination of prosecution witnesses

Petitioner next alleges for the first time that his defense counsel "lacked any ability to cross examine the prosecution witnesses" and was therefore ineffective. (Doc. 25 at 5). Petitioner does not describe any specific error made by counsel during cross-examination, or any instances where counsel should have cross-examined a witness but was unable to do so. This claim appears to be nothing more than a generalized grievance. As petitioner does not "identify[] specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance," this ineffective assistance of counsel claim must fail. Without a factually specific allegation, there is no showing of a "reasonable probability" that the alleged error affected the

outcome of the trial. *See Robinson*, 278 F.3d at 865-66. Accordingly, this claim is without merit.

### (d) County Sheriff as defense witness

Petitioner next argues for the first time that his defense counsel rendered ineffective assistance by not calling the local county sheriff as a trial witness to attack the validity of the search warrant which was executed at his home. A Missouri statute concerning the execution of warrants by members of the Missouri Highway Patrol provides as follows:

> The members of the highway patrol may request that the prosecuting or circuit attorney apply for, and members of the highway patrol may serve, search warrants anywhere within the state of Missouri, provided the sheriff of the county in which the warrant is to be served, or his designee, shall be notified upon application by the applicant of the search warrant except for offenses pertaining to driving while intoxicated. The sheriff or his or her designee shall participate in serving the search warrant except for offenses pertaining to driving while intoxicated and the investigation of motor vehicle traffic accidents.

Mo. Rev. Stat. § 43.200.3. Petitioner contends that the warrant executed at his home by the Missouri Highway Patrol was invalid, because notice had not been given to the local sheriff and the local sheriff's assistance had not been sought. However, Missouri courts have held that the use of the word "shall" in this statute is directory—not mandatory— and that parties challenging the validity of warrants in this manner must show that they have been prejudiced by such a failure. *State of Missouri v. Walker*, 330 S.W.3d 122, 126-27 (Mo. Ct. App. 2010). Under Missouri law, the failure to comply with this statute alone does not affect the admissibility of evidence. *Id.* There has been no showing of prejudice to warrant relief under Missouri law.

In any event, it is not Missouri law that is being enforced in this federal habeas corpus action. It is federal constitutional law. Counsel's performance cannot be constitutionally defective for failing to pursue a meritless claim under state law, and petitioner has not demonstrated that the addition of this witness would have changed the outcome of the trial.

<u>(e) "Stun cuff" restraining device worn by petitioner at trial</u>

Petitioner next argues for the first time that his defense counsel was constitutionally ineffective by failing to object to the "Stun Cuff" device placed on him during his trial. Petitioner claims that this caused a "mental restraint and negative influence" and was applied without the court's permission.[1] Petitioner appears to rely at least in part on the Supreme Court's ruling in *Deck v. Missouri*, which held that the use of visible shackles during a trial was a violation of a criminal defendant's constitutional rights. 544 U.S. 622, 626 (2005). *Deck* involved a defendant who was shackled with leg irons, handcuffs, and a belly chain. *Id.* at 625. However, a criminal defendant's constitutional rights are only violated when *visible* restraints are used. *Id.* ("The law has long forbidden routine use of visible shackles during the guilty phase [of a jury trial]; it permits a State to shackle a criminal defendant only in the presence of a special need."). The law is the same in non-capital offense cases. *Id.* at 632. *See also United States v. Mahasin*, 442 F.3d 687, 690-91 (8th Cir. 2006). In his case, petitioner did not allege that the "Stun Cuff" device worn by him during trial was visible to the jury and thereby prejudiced his case. Petitioner's failure to show actual prejudice by the wearing of the device establishes that this ground for federal habeas relief is meritless. *Cf., Johnson v. Sperfslage*, 768 Fed. Appx. 592, 594 (8th Cir. 2019).

Petitioner's allegations more specifically allege that the presence of the stun device in some way reduced his mental ability to participate in the trial. (Docs. 25 at 5, 27 at 7-9). This allegation also fails as a matter of law, because it is made in this Court now for the first time; it was not raised in the state court. Also, he does not allege any specific way in which his mental participation in his trial was diminished in any substantial way

---

[1] During a pretrial conference with the trial judge, when discussing his right to testify at trial, petitioner told the judge he did not intend to testify. The judge told him to let the court know if he changed his mind, to which petitioner stated, "I won't make any outburst, I promise, I don't want to get tazed." At this point the colloquy went off the record. When back on the record, no statement was made of any topic discussed. (Doc. 27-2 at 18-21).

by the mere presence of the device. He does not allege in any specific manner how, if his defense counsel had objected to the device and if the objection had been sustained, his participation in the trial would have been different and would likely have resulted in a different outcome.

For these reasons, this specification of constitutionally ineffective assistance of counsel is without merit.

### (f)  Failure to request mistrial after judicial tampering charge was dismissed

Petitioner next argues that his defense counsel rendered constitutionally ineffective assistance by failing to move for a mistrial after he was acquitted, at the conclusion of the State's evidence, of tampering with a judicial officer. The evidence to support the judicial tampering count included the YouTube video. Petitioner argues that showing the video to the jury resulted in substantial prejudice to him and therefore denied him a fair trial. While petitioner did not frame this issue in his state court proceedings as one of ineffective assistance of counsel, petitioner did claim—on direct appeal—that the trial court erred when it did not *sua sponte* declare a mistrial after granting his motion for judgment of acquittal on the judicial tampering charge.

The reasoning of the Missouri Court of Appeals in addressing this argument is germane to the second prong of the ineffective assistance of counsel analysis, that is, whether petitioner was prejudiced by the asserted error of the trial court. The trial court held and the Court of Appeals affirmed that the evidence admitted on the judicial tampering count was also admissible on the first-degree assault count, because it presented a complete picture of the events and showed petitioner's motive and intent to commit the assault:

> In his seventh point on appeal, Appellant argues that the trial court plainly erred in not declaring a mistrial *sua sponte* after it granted the Motion for Judgment of Acquittal on the judicial tampering charge, and in failing to instruct the jury to disregard the YouTube video. Appellant claims the video was relevant only to the judicial tampering charge, and that showing the video to the jury was a "bell that could not be unrung" and resulted in substantial prejudice and manifest injustice to him.

Appellant's trial counsel failed to request a mistrial after the trial court granted the Motion for Judgment of Acquittal on the judicial tampering charge, and also failed to request that the judge instruct the jury to disregard the YouTube video as to the other charges. As Appellant failed to raise this issue at trial, he requests plain error review. As stated previously in this memorandum, plain errors "affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20

"The declaration of a mistrial is a drastic remedy which should only be employed in the most extraordinary circumstances." State v. Drewel, 835 S.W.2d 494, 498 (Mo. App. E.D. 1992) (citing State v. Young, 701 S.W.2d 429, 434 (Mo. banc 1985)). "*Sua sponte* action should be exercised only in exceptional circumstances." Drewel, 835 S.W.2d at 498.

The trial court has broad discretion in admitting or excluding evidence at trial, and we will reverse a ruling admitting evidence only if the trial court clearly abused its discretion. State v. Young, 367 S.W.3d 641, 644 (Mo. App. E.D. 2012). An abuse of discretion occurs only when a "'ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" Id., quoting State v. Thompson, 341 S.W.3d 723, 731 (Mo. App. E.D. 2011).

Generally, evidence of prior bad acts or uncharged crimes is inadmissible for the purpose of showing a defendant's criminal character or propensity to commit a certain crime. Young, 367 S.W.3d at 645. However, if such evidence is logically and legally relevant it may be admitted. Id. The evidence must have "some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial" and its probative value must outweigh its prejudicial effect. State v. Bernard, 849 S.W.2d 10, 13 (Mo. banc 1993). Some common uses for uncharged crimes are to establish motive, intent, the absence of mistake or accident, a common scheme or plan, or identity. Young, 367 S.W.3d at 645. These exceptions are not exhaustive and such evidence may be admitted without falling under one of the listed exceptions, as long as it is logically and legally relevant. Id. Evidence of uncharged crimes "may be admitted 'to present a complete and coherent picture of the events that transpired.'" Id., quoting State v. Primm, 347 S.W.3d 66, 70 (Mo. banc 2011).

We believe the YouTube video did just that – it helped "to present a complete and coherent picture of the events that transpired." *Young*, 367 S.W.3d at 645. As discussed above, the YouTube video is the piece of evidence that set this whole series of events in motion. It helped establish Appellant's guilt of first-degree assault by showing his potential motive or intent to harm Sgt. Folsom, and its probative value outweighed any prejudicial effect it had on Appellant. We find no miscarriage of justice or manifest injustice present here. Appellant's point VII is denied.

(Doc. 27, Ex. 14 at 10-12).

This decision of the Missouri Court of Appeals was not "contrary to" federal law, nor did it involve an unreasonable determination and application of the facts. The state court concluded that the video was not inadmissible character evidence, as it went toward establishing petitioner's motive or intent, and any prejudicial effect was outweighed by the probative value of the video. The Court of Appeals found the inclusion of the YouTube evidence did not warrant a *sua sponte* order of mistrial, and petitioner has not shown a reasonable probability that, had counsel moved for a mistrial, the outcome of the trial would have been any different.

### (g) Failure to call witnesses that petitioner
### was incapable of committing the crimes charged

Petitioner alleges that his defense counsel rendered constitutionally ineffective assistance by not calling

any witness or establish any reasonable defense that would support the position of [petitioner] that he was incapable of or unable to commit the crimes for which he was charged and innocent thereof.

(Doc. 25 at 6). This ground fails on its face as a matter of law, because it fails to comply with Rule 2(c)(2) of the Rules Governing Section 2254 Cases, Rules foll. 28 U.S.C.A. § 2254, by not stating the facts upon which petitioner relies to establish this ground for relief. Petitioner does not indicate in what manner he would be incapable of committing the subject crimes, what any witness would have testified to in support such a position, whether he notified his defense attorney about any such witness and expected testimony,

or that such testimony or related evidence would have made a difference in the outcome of the trial. Such vague allegations as are found in this specification of alleged ineffective assistance of counsel totally fail to allege how this ground qualifies for relief under 28 U.S.C. § 2254(d), quoted above. *See Ruiz v. Norris*, 71 F.3d 1404, 1407 (8th Cir. 1995) (ruling that the federal habeas petitioners had failed to allege "a clear offer of proof" of factual support for the claim of ineffective assistance of counsel).

The allegations in this ground for relief are legally insufficient on their face.

### (h) Failure to demand that jury be advised why judicial tampering charge was dismissed

Petitioner next argues that his defense counsel rendered ineffective assistance by failing to demand that the jury be notified why petitioner was acquitted on the judicial tampering charge. Petitioner argues that this resulted in the jury using the now irrelevant video recording in arriving at the verdict. However, as discussed by the Missouri Court of Appeals, and by this Court above, "the YouTube video is the piece of evidence that set this whole series of events in motion. It helped establish Appellant's guilt of first-degree assault by showing his potential motive or intent to harm Sgt. Folsom, and its probative value outweighed any prejudicial effect it had on Appellant." (Doc. 27, Ex. 14 at 10-12). Thus it is that the video was not rendered irrelevant and inadmissible on the charges that were submitted to the jury. Had counsel moved to strike it, the trial court would likely have correctly overruled the motion. Thus, the record shows that petitioner did not establish that the outcome of his trial would have been any different.

Accordingly, this claim is denied.

### (i) Failure to move to strike video evidence as irrelevant

Petitioner next argues that his defense counsel rendered ineffective assistance by failing to move to strike the YouTube video from evidence. As discussed above, however, the YouTube video was properly admitted into evidence, as it went toward establishing petitioner's motive or intent, and any prejudicial effect it may have had was

outweighed by its probative value. Because the video evidence was legally admissible, petitioner's counsel was not constitutionally deficient for failing to move to strike it from evidence. Accordingly, this claim is denied.

## B. Grounds 2 and 3

In Ground 2, petitioner alleges that the search conducted at his residence violated his First Amendment rights. The legal context of petitioner's claim was stated by the United States District Court for the Northern District of Iowa, albeit in a civil case but also involving the issuance of a search warrant:

> "Criticism of public officials lies at the very core of speech protected by the First Amendment. Retaliation by a government actor in response to an exercise of First Amendment rights forms a basis for § 1983 liability." *Nasucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002) (internal quotations omitted). To establish such a claim, a plaintiff must prove (1) he or she engaged in protected activity, (2) the defendant responded with adverse action that would "chill a person of ordinary firmness" from continuing in the activity, and (3) that "the adverse action was motivated at least in part by the exercise of the protected activity." *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.,* 673 F.3d 799 (8th Cir. 2012).
>
> A plaintiff claiming First Amendment retaliation in the form of retaliatory prosecution must allege (and prove) that there was an absence of probable cause to support the prosecution. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006). "Probable cause exists if at the moment [the prosecutor acted], 'the facts and circumstances within [the prosecutor's] knowledge and of which [the prosecutor] had reasonably trustworthy information were sufficient to warrant a prudent man in believing'" that the plaintiff had violated a criminal statute or ordinance. *Williams v. City of Carl Junction*, 480 F.3d 871, 877 (8th Cir. 2007) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).

*Richter v. Smith*, 2018 WL 6728515, at *6 (N. D. Iowa Dec. 21, 2018). The requirement that a claim of First Amendment violation in the context of a criminal investigation was reinforced by the Supreme Court in *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). While petitioner Weinhaus seeks release from Missouri state incarceration by this ground as § 2254 relief and not as compensation or other relief under 42 U.S.C. § 1983, the

preliminary, cardinal issue is the same: whether the Fourth Amendment's requirement of probable cause for the issuance of the search warrant for his residence was violated. *Roaden v. Kentucky*, 413 U.S. 496, 504 (1973); *cf.*, *Hunter v. Bryant*, 502 U.S. at 252, 265; *cf., Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"). Because petitioner's federal habeas Ground 3 alleges that the search conducted at his home violated his Fourth Amendment rights, the Court considers petitioner's Grounds 2 and 3 together.

"A Fourth Amendment claim of an unconstitutional search or seizure is not cognizable in a habeas corpus action unless the state has not 'provided an opportunity for full and fair litigation' of the claim." *Sweet*, 125 F.3d at 1149 (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1976)). Federal habeas courts are not empowered to examine whether a state court made an error of law in deciding the Fourth Amendment issue raised by petitioner. *Id.* Search-and-seizure claims are only cognizable in habeas actions if the state courts provided "no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart*, 37 F.3d 1265, 1270 (8th Cir. 1994) (en banc), *cert denied*, 514 U.S. 1052 (1995). This is true regardless of whether the petitioner actually sought relief in the state courts from an alleged Fourth Amendment violation. *Id.* at 1271 (approving of the two-part test determined by the Second Circuit in *Capellen v. Riley*, 975 F.2d 67, 71 (2d Cir. 1992) ("(a) if the state has provided *no corrective procedures at all* to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an *unconscionable breakdown in the underlying process*.")

Missouri rules of court provide criminal defendants an opportunity to contest whether the prosecution acquired its evidence in violation of the Fourth Amendment. *See* Mo. S. Ct. R. 24.05. The record of petitioner's case in the circuit court indicates that no

motion was filed to suppress any evidence seized in the execution of the search warrant. The trial record indicates that the search warrant was applied for after officers went to his residence to visit with him after his threatening Youtube video was discovered. When the officers were at his residence, they knocked on the front door. Petitioner came to the door and they immediately smelled the odor of marijuana emanating from the house and from him. (Doc. 27-2 at 173). After conversing with him about the video for 25 to 30 minutes, the officer asked petitioner whether there was any marijuana inside the house. Petitioner denied it. When petitioner attempted to return inside the house, the officers restrained him, telling him that they were going to apply for a search warrant, whereupon petitioner began screaming to someone in the house that the police intended to search the house for drugs. (*Id.* at 174-77).

At trial, the defense made no objection to the trial court's receipt into evidence of the search warrant in front of the jury. (*Id.* at 178). After the search warrant was issued, the officer returned with it to petitioner's residence, gave a copy of it to petitioner, and told him he was free to leave. (*Id.* at 179). During the search of the residence, the officers found computer equipment, video cameras, a loaded .9 mm handgun, and ammunition. The firearm was found in a drawer with paperwork that indicated it belonged to petitioner's paramour, who was also present. The photographs of the discovered items were received into evidence without objection. The discovered items, except the firearm, were seized by the officers. (*Id.* at 181). In a desk drawer on the main level, the officers found drug paraphernalia, several pills in a container, scales and marijuana in a container, and smoking pipes, all of which were seized. All of the seized items were received into evidence at trial without objection. (*Id.* at 185-86). Also, in defense counsel's opening statement to the jury, he described the execution of the search warrant and the items that were seized. (*Id.* at 160-61). [2]

_____

[2] The evidence of probable cause for the issuance of the search warrant, found in the trial record, was very strong. It included the perception by the officers of the strong odor of marijuana emanating from the front door of petitioner's residence and his loud warning to the other occupants that the police would be searching for drugs. The existence of

Petitioner has not shown that he was prevented from raising any Fourth Amendment issue before or during trial. He had the opportunity to object at trial, on direct appeal, and in his motion for post-conviction relief to various pieces of evidence used against him at trial. No Fourth Amendment objection was raised at trial, on direct appeal (Docs. 27-10, 27-13) or in his motion for post-conviction relief (Doc. 27-17). Without a state court determination of petitioner's Fourth Amendment rights regarding the search warrant issued for his residence, this habeas corpus court is without authority to assess whether petitioner's First Amendment rights were violated in the issuance and execution of the search warrant.

That said, the record is clear that the state court search warrant for petitioner's residence was grounded upon probable cause.

Accordingly, Grounds 2 and 3 are denied.

## D. Ground 4

In Ground 4, petitioner alleges that being required to wear a "Stun Cuff" device during his trial violated the Eighth Amendment prohibition on cruel and unusual punishment.[3]

The use of stun restraints at trial does not by itself violate the constitutional rights of the accused. *See*, *e.g.*, *Williams v. Norris*, 612 F.3d 941, 957-59 (8th Cir. 2010); *United States v. Honken*, 541 F.3d 1146 (8th Cir. 2008). Further, trial courts have discretion to take security measures required to maintain order within the courtroom. *Deck*, 544 U.S. at 632. However, Missouri courts have recognized that the prohibition on the use of restraints at trial "is limited to restraints that are actually visible to the jury."

---

probable cause for the issuance of the search warrant was not disputed by petitioner at trial.

[3] Petitioner also alleges in this ground that the trial court erred by failing to *sua sponte* declare a mistrial following its granting petitioner's motion to acquit on the charges of tampering with a judicial officer and resisting arrest. Petitioner makes the same mistrial claim in Ground 5. The Court deals with this issue in its discussion of Ground 5.

*Davidson v. State*, 308 S.W.3d 311, 316 (Mo. Ct. App. 2010) (citing *Zink v. State*, 278 S.W.3d 170, 185-86 (Mo. banc 2009)).

As this claim was procedurally defaulted by petitioner, there being no state court opinion deciding it adversely to petitioner, this Court applies the pre-AEDPA standard of review. *Gingras v. Weber*, 543 F.3d 1001, 1003 (8th 2008). In order to prevail under this pre-AEDPA standard, the petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial, or that the verdict likely would have been different absent the now challenged [defect]." *Robinson v. Crist*, 278 F.3d 862, 865-66 (8th Cir. 2002).

Petitioner has made no such showing here. While petitioner alleges that use of the stun device constitutes torture in a number of other countries, this consideration is not relevant to this Court's decision. Petitioner proffered no evidence that the jury in his case was aware of this device or that it was ever activated. In the absence of any such evidence, there is no reason to believe that wearing the device affected the outcome of petitioner's trial. Requiring petitioner to wear the "stun cuff" did not violate the Eighth Amendment's prohibition of cruel and unusual punishment.

Accordingly, Ground 4 is denied.

**E. Ground 5**

In Ground 5, petitioner alleges a number of grounds related to Fifth and Fourteenth Amendment violations of Due Process, including errors committed by the trial court, such as failing to declare a mistrial *sua sponte*, failing to provide a limiting instruction relating to the YouTube video, failing to allow the jury access to frame captures of the digital watch video, and denying petitioner an opportunity to present unspecified demonstrative evidence. The Court considers these claims.

(a)  Failure to declare mistrial after<br>
<u>acquitting petitioner of tampering with a judicial officer and resisting arrest</u>

As discussed in Ground 1(f), *above*, this argument was dealt with by the Missouri Court of Appeals when it discussed the admission of the video for purposes of determining petitioner's intent or motive relating to the assault charge.

> Generally, evidence of prior bad acts or uncharged crimes is inadmissible for the purpose of showing a defendant's criminal character or propensity to commit a certain crime. However, if such evidence is logically and legally relevant it may be admitted. The evidence must have "some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial" and its probative value must outweigh its prejudicial effect. Some common uses for uncharged crimes are to establish motive, intent, the absence of mistake or accident, a common scheme or plan, or identity. These exceptions are not exhaustive and such evidence may be admitted without falling under one of the listed exceptions, as long as it is logically and legally relevant. Evidence of uncharged crimes may be admitted to present a complete and coherent picture of the events that transpired.

(Doc. 27, Ex. 14 at 10-12) (internal citations and quotations omitted).  The trial court found, as did the appellate court, that this evidence was admissible on the assault count because it spoke to the defendant's motive or intent in committing that assault.  The video's prejudicial effect was outweighed by its probative value.  Since the evidence was relevant for the purposes of determining the elements of the assault, a *sua sponte* declaration of a mistrial was not warranted.  The state court did not reach a decision that was contrary to clearly established federal law, nor did it reach its decision based on an unreasonable determination of the facts.

Accordingly, this claim is denied.

<u>(b)  Failure to provide limiting instruction regarding the YouTube video</u>

Similarly, a limiting instruction to the jury was not required to accompany the video.  As discussed above, the trial and appellate courts found that the video was

admissible on the assault count since it related to the defendant's motive or intent in committing that assault. The video's prejudicial effect was outweighed by its probative value. A limiting instruction was not required. The state court did not reach a decision contrary to clearly established federal law, nor did it reach its decision based on an unreasonable determination of the facts.

Accordingly, this claim is denied.

### (c)  Failure to allow the jury access to frame captures

As discussed above, this ground for relief was addressed by the Missouri Court of Appeals and dismissed. Again, this evidence, at most, would have been used to impeach the testimony of Sergeant Folsom and would not have provided petitioner a viable defense. The appellate court's ruling involved neither a decision contrary to, nor an unreasonable application of, federal law, nor a decision that was based on an unreasonable determination of the facts presented in the case.

Accordingly, this claim is denied.

### (d)  Failure to allow petitioner's demonstrative evidence

Petitioner next argues that his rights to due process were denied when he was not allowed to offer unspecified demonstrative evidence. Petitioner does not specify the type of evidence that was to be offered, nor does he state that this unspecified evidence would have provided a valid defense or detracted from the state's case. The only clue offered by petitioner as to the nature of this evidence is that it would have, presumably, been offered to impeach the testimony of Sergeant Folsom and Corporal Mertens. Petitioner has not offered any specific basis for concluding that "the state court's presumptively correct factual findings do not enjoy support in the record." *Evenstad*, 4701 F.3d at 782.

Because petitioner has not alleged specific facts showing a constitutional error, this claim is without merit.

Accordingly, this claim is denied.

<u>(e)  Denial of Due Process from the use of the stun cuff restraint</u>

Petitioner next alleges that his due process rights were denied when he was required to wear the stun cuff device at trial.  This claim was not raised on direct appeal or on petitioner's motion for post-conviction relief. Petitioner again appears—though not explicitly—to rely on *Deck*, 544 U.S. at 626, for the proposition that his due process rights were denied because he was required to wear the device at trial.  Again, however, a criminal defendant's due process rights are only violated when *visible* restraints are used.  *See Deck*, 544 U.S. at 630; *see also Zink*, 278 S.W.3d at 186.  The usage of stun-belts and other restraining devices are justified by the same essential government interests that justify the use of shackles.  *Honken*, 541 F.3d at 1164.

As discussed above, petitioner has presented no evidence that any jurors were aware he wore the stun cuff device during trial.  For this reason, no Due Process right was violated.

> [T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.

*Deck*, 544 U.S. at 630.  Petitioner has not alleged facts indicating the jury's awareness of the restraint, so he has not shown that the use of the restraint affected the outcome of the trial.

Accordingly, this claim is denied.


**F.  Ground 6**

In Ground 6, petitioner alleges that his Fourteenth Amendment right to equal protection under the law was violated.  Many of the specific claims listed here are alleged elsewhere in the petition, are without merit, and are not discussed further.  However, petitioner also claims, as he did on direct appeal, that there was insufficient evidence presented at trial to convict him.  This ground for relief is without merit.

The standard for this ground for relief is clear. Petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson v. Virginia*, 443 U.S. at 324 n.16). Juries have "broad discretion" in deciding which inferences should be drawn from the evidence at trial, so long as those inferences are reasonable. *Johnson*, 566 U.S. at 655. Additionally, a federal court conducting a habeas review of a state court decision may only overturn the state court decision if that decision was "objectively unreasonable." *Id.* at 651.

The Missouri Court of Appeals, in denying petitioner's direct appeal, summed up the relevant Missouri law and evidence that could have been relied upon by the jury. (Doc. 27, Ex. 14 at 3-7). It stated the relevant law as follows:

> "A person commits the crime of assault of a law enforcement officer . . . in the first degree if such person attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement officer . . . ." Section 565.081.1. For a defendant to be guilty of an attempt to commit an offense, he must, "with the purpose of committing the offense," perform an "act which is a substantial step towards the commission of the offense." Section 564.011.1, RSMo (2000). "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 564.011.1. A mere threat alone is not enough to constitute an attempt to commit a crime; there must be "strongly corroborating evidence that it was the defendant's conscious object to carry out the threat."

> " . . . [A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action . . . ." Section 571.015.

(*Id.* at 3-4). The appellate court described the evidence supporting the jury's findings thus:

In looking at Appellant's conduct before and during the act, it is clear that sufficient evidence existed for a reasonable juror to find Appellant guilty beyond a reasonable doubt. Appellant's YouTube video repeatedly references the potential violent overthrow of specific government officials, and in one video Appellant says he "should have placed a bullet in [Sgt. Folsom's] head." Further, Appellant brought three loaded guns to a meeting with police officers, and then proceeded to open his holster and rest his hand on his gun, even after officers ordered him to the ground. Appellant also told Sgt. Folsom, "You're going to have to shoot me" in response to Sgt. Folsom pointing his weapon at Appellant and ordering him to the ground.

(*Id.* at 4-5).

This Court concludes that there was ample evidence for a rational jury to find that by bringing loaded guns to a meeting with police officers, opening his holster, resting his hand on his gun, and telling the officers that they were going to have to shoot him, petitioner took a "substantial step" towards assaulting Sergeant Folsom. The evidence further allowed the jury to conclude that petitioner was not issuing idle threats, but in fact intended to carry out an assault on the officer. Petitioner's statement he "should have placed a bullet in [Sgt. Folsom's] head" demonstrated an assaultive intent. A rational jury could find petitioner guilty of the assault count beyond a reasonable doubt, and the state court was reasonable in upholding that conviction.

Because petitioner also employed a firearm during the attempted assault, the jury had enough evidence to find petitioner guilty on the armed criminal action count beyond a reasonable doubt, and the state courts' decision in this regard was reasonable.

Summing up the law and evidence relating to the possession of marijuana and morphine charges, the appellate court noted the following:

Except under certain exceptions, it is unlawful for any person to possess or have under his control a controlled substance." Section 195.202.1. Someone who knows "of the presence and nature of a substance, has actual or constructive possession of the substance." Section 195.010.34. "A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. *Id.*

Here, the bulk of the controlled substances were found in a desk in Appellant's basement, an area he referred to as his "command center." Appellant's videos all were filmed with him sitting in the "command center." On the day of the search, officers said Appellant smelled of marijuana, and further that once he was handcuffed, that he yelled into the house that the police were coming in to look for drugs. A reasonable juror could readily find from sufficient evidence on the record that Appellant had routine access to the area where the drugs were found, that his personal belongings were mixed in with the drugs, and therefore that Appellant exercised control over the area and likely the drugs themselves.

(*Id.* at 5-6). The state was also required to prove, in areas where there was evidence of joint control over the premises, additional evidence connecting petitioner to the controlled substance. (*Id.* at 6); *State v. Riley*, 440 S.W.3d 561, 565 (Mo. Ct. App. 2014).

The jury here could reasonably consider the officers' testimony that they detected marijuana on petitioner's person as well as in the house, that the controlled substances where found in a desk in an area of the basement that was accessed and used by the him. There was enough evidence here for a jury to find that the petitioner likely not only had access to the area where the substances were kept, but that petitioner had control over the substances themselves. There was enough evidence here for a rational jury to find petitioner guilty of the possession counts beyond a reasonable doubt, and the state court was reasonable in upholding those convictions.

It is clear from this Court's review of the record that there was substantial evidence to convict petitioner as it did. Because the state courts did not reach decisions contrary to clearly established federal law, nor did they reach decisions based on an unreasonable determination of the facts, Ground 6 is without merit.

## VI. CONCLUSION

For the reasons set forth above, the petition of Jeffrey Weinhaus for a writ of habeas corpus is denied. Petitioner has made no substantial showing that he was deprived of a constitutional right. Therefore, a certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith.

_____/S/ David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 13, 2019.